### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ANDRE WIGGINS,** | Civ. No. 2:07-2805 |
| **Plaintiff,** | (KM)(MCA) |
| **v.** | |
| **JEFFREY ROBINSON,** | **OPINION** |
| **Defendant.** | |

<u>**KEVIN MCNULTY, U.S.D.J.**</u>:

This matter comes before the Court on the motion of the defendant, Detective Jeffrey Robinson, for summary judgment. (Docket No. 62). The plaintiff, Andre Wiggins, filed this 42 U.S.C. § 1983 lawsuit against the City of Hackensack, New Jersey, and Hackensack police officers for claims arising from his state arrest and prosecution. Plaintiff has voluntarily dismissed all claims except for a claim of malicious prosecution against Defendant Jeffrey Robinson. *See* Order of Dismissal (Docket No. 61); Opp. (Docket No. 66) at 6-7. Because I find that there is no genuine issue of material fact remaining in the case, Defendant's motion for summary judgment is **GRANTED**.

### I.  BACKGROUND

The facts presented are taken from Robinson's Statement of Uncontested Material Facts ("SUMF"), submitted pursuant to L. Civ. R. 56.1 (Docket No. 62-7), and the exhibits submitted by the parties. Wiggins did not file a responsive statement of facts with his opposition to the motion for summary judgment.[1] The facts regarding the circumstances of Wiggins's arrest are taken from the

---

[1]   Although Wiggins did not submit a responsive statement of facts, I will consider his brief and supporting exhibits as they contrast with Robinson's assertions. The Court may relax the requirements of L. Civ. R. 56.1 as to the non-movant in appropriate circumstances, and allow the non-movant to rely on his briefing and evidentiary submissions to dispute the movant's statement of purportedly undisputed facts. *See* L. Civ. R. 56.1(e) (citing *Boswell v. Eoon*, 452 F. App'x 107, 111-12 (3d Cir. 2011) (not precedential)).

New Jersey Appellate Division's decision affirming Wiggins's conviction. SUMF Ex. H. Wiggins generally denies the veracity of these facts. *See* Opp. at 1-3.

## A. Statement of Facts

Andre Wiggins, an African-American, was arrested on September 15, 2003, after allegedly selling drugs to Detective Robinson on July 3 and July 8, 2003. At the time of these incidents, Robinson was a Paterson Police Officer temporarily assigned as an undercover officer to the Hackensack Police Department.[2] SUMF ¶¶ 1, 3. Robinson was assigned to work with Hackensack Detective Scott Sybel, Detective Albert Gutierrez, and Sergeant Linquito. SUMF Ex. H. at 5. Sybel showed Robinson a photograph of Carey Wiggins, Andre Wiggins's father,[3] and directed him to make an undercover purchase at Carey Wiggins's residence. *Id.* at 5-6.

On July 3, 2003, Robinson went to the apartment with Maribel Sanchez, a confidential informant, to make the purchase. *Id.* at 6. When they arrived, Andre Wiggins told him that the cocaine was not ready but that if they waited, his father "should be done cooking it." *Id.* Robinson witnessed Carey Wiggins stirring a pot of what appeared to be crack cocaine, which Andre Wiggins told him was "the best crack around." *Id.* Robinson watched Carey Wiggins package the cocaine into several one-half inch plastic bags. *Id.* Robinson paid Andre Wiggins $20 for one of the bags and left the apartment with Sanchez. *Id.* at 7. The drugs were then marked as evidence at the Hackensack police headquarters. *Id.*

On July 8, 2007, Robinson returned to the apartment without Sanchez to make a second buy. *Id.* Robinson gained admission to the apartment by identifying himself as Andre Wiggins's friend, but Carey Wiggins told him that he did not have drugs to sell. He directed Robinson to his son, who was in a nearby parking lot. *Id.* Robinson went to the parking lot, got into a red Toyota Camry with Andre Wiggins, and purchased a second small bag of crack cocaine for $20. *Id.*

Robinson returned to the Hackensack police headquarters where Linquito told him that Sybel and Gutierrez had stopped Wiggins's car. *Id.* Linquito and Robinson then drove past the scene of the stop and Robinson identified Wiggins as the person who sold him drugs. *Id.* Robinson later also identified Wiggins in a photo array. *Id.* Laboratory tests of the bags Robinson

---

[2]    The SUMF states both that Wiggins allegedly purchased drugs from Robinson, and that he sold them to Robinson. SUMF ¶¶ 2, 3. This appears to be an error, as all the evidence in the record establishes that Wiggins sold to Robinson.

[3]    Herein, unless Carey Wiggins is specified, "Wiggins" refers to Andre Wiggins.

purchased confirmed that they contained crack cocaine. *Id.* When Carey and Andre Wiggins were arrested, no drugs, scales, large quantities of cash, or other contraband were found on their persons, in the apartment, or in the vehicle. *Id.* at 7-8.

Wiggins presents a very different account of these events. In his brief, he argues that Robinson fabricated evidence and acted in concert with other Hackensack officers to falsely incriminate him. Opp. at 1. Wiggins asserts that Robinson was off-duty and not acting in his official capacity when he went to Wiggins's apartment. *Id.* at 1-2. Wiggins also asserts that Robinson used informant Sanchez to introduce him to drug dealers so that he could satisfy his drug habit, and that he and Sanchez had a sexual relationship. *Id.* at 2. Wiggins claims that Robinson and Sanchez used crack cocaine together on multiple occasions, including on July 3, 2003 and July 8, 2003. *Id.* Wiggins denies selling any drugs to Robinson, and asserts that Robinson did not attempt to purchase any drugs from him. Instead, Robinson went to the apartment to smoke crack cocaine with Sanchez and Carey Wiggins. *Id.*

On January 26, 2004, a grand jury in Bergen County Superior Court indicted Wiggins on six counts charging him with various offenses in connection with the distribution and possession of cocaine on July 3, 2003 and July 8, 2003.[4] SUMF ¶ 4 (citing Ex. C). Wiggins rejected an offer of a plea agreement in November 2004 and elected to proceed to trial. *Id.* ¶ 5.

On December 16, 2004, a grand jury returned a superseding indictment that contained an additional count of knowingly maintaining or operating premises used for the manufacture of cocaine, in violation of N.J.S.A. 2C:35-4. *Id.* ¶¶ 6, 7 (citing Ex. D). All told, Wiggins was charged with the following:

1. Distribution of cocaine on July 3, 2003 in violation of N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(3);
2. Manufacture and/or possession of cocaine with intent to distribute on July 3, 2003 in violation of N.J.S.A. 2C:35-5a(1) and 2C:35-5b(3);
3. Maintaining or operating a premises, place, or facility; or knowingly aiding, promoting, financing or participating in the maintenance of operations of said premises, at 6-8 Prospect Avenue, Apartment 404, on July 3, 2003 to manufacture cocaine in violation of N.J.S.A. 2C:35-4;

---

[4]    The counts contained in the original indictment were as follows: (1) distribution of cocaine on July 3, 2003; (2) possession with intent to distribute cocaine on July 3, 2003; (3) simple possession of cocaine on July 3, 2003; (4) distribution of cocaine on July 8, 2003; (5) possession with intent to distribute cocaine on July 8, 2003; and (6) simple possession of cocaine on July 8, 2003. SUMF ¶ 4.

4. Simple possession of cocaine on July 3, 2003 in violation of N.J.S.A. 2C:35-10a(1);
5. Distribution of cocaine on July 8, 2003 in violation of N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(3).
6. Distribution of cocaine on July 8, 2003 on school property in violation of N.J.S.A.2C:35-5a and N.J.S.A. 2C:35-7.
7. Simple possession of cocaine on July 8, 2003 in violation of N.J.S.A. 2C:35-10a(1).

Before the start of the trial, Wiggins filed a motion to reveal the identity of the confidential informant. *See* SUMF Ex. C; SUMF ¶ 9. Bergen County Superior Court Judge Gaeta denied that motion on March 18, 2005. *Id.* ¶ 9 (citing Ex. F).

Wiggins's jury trial proceeded from June 9, 2005, to June 17, 2005, before Judge Gaeta. *Id.* ¶ 10. On June 17, 2005, Wiggins was found guilty of Counts 1, 2, 4, 5, 6 and 7, but acquitted of Count 3—the additional "maintaining or operating premises" count under N.J.S.A. 2C:35-4 that was added to the superseding indictment. *Id.* ¶¶ 11-12 (citing Ex. B).

After the verdict was received, but before sentencing, Wiggins located confidential informant Sanchez. *Id.* ¶ 13 (citing Ex. H). Wiggins requested and obtained an affidavit from Sanchez that allegedly exculpated him and incriminated Robinson. *Id.* ¶ 14. Wiggins then moved for a new trial on the basis of newly discovered evidence. *Id.* ¶ 15. Sanchez subsequently "sought out" the Hackensack Police and supplied a second affidavit rescinding her claims against Robinson. *Id.* ¶ 16.

The trial court held an evidentiary hearing from May 22, 2006, to June 5, 2006, to determine whether Wiggins's motion for a new trial should be granted. *Id.* ¶ 17. After testimony was heard, Judge Gaeta denied that motion. *Id.* Wiggins was sentenced on June 5, 2006. *Id.* ¶ 18. Counts 2 and 4 were merged into Count 1 and Counts 5 and 7 were merged into Count 6. Ex. B. Wiggins was sentenced to one term of three years for Count 1 (distribution of cocaine) and one term of five years with three year parole eligibility for Count 6 (distribution of cocaine on school property). Ex. B. The sentences imposed were to run consecutively. SUMF ¶ 18.

Wiggins filed a Notice of Appeal with the New Jersey Appellate Division on October 4, 2006. *Id.* ¶ 19 (citing Ex. G). On appeal, Wiggins raised the following issues:

1. His motion for a new trial should have been granted.
2. The misconduct of the police, the prosecutor and the trial court improperly induced the informant, who was known to the defense,

to disobey a defense subpoena and refuse to testify at the hearings on the new trial motion, and infringed defendant's constitutional right to compulsory process under the Sixth Amendment of the U.S. Constitution and Art. 1, ¶ 10 of the New Jersey Constitution, and his due process rights under the Fourteenth Amendment of the U.S. Constitution and Article 1, ¶ 1 of the New Jersey Constitution.

3. The trial court violated defendant's constitutional rights to due process and to confront a "critical witness" against him by denying the defense motions for in camera review of Detective Robinson's personnel file.

4. Defendant's constitutional right to due process and a fair trial was infringed by multiple acts of prosecutor's misconduct.

5. The jury instruction on reasonable doubt violated defendant's rights to the presumption of innocence and proof beyond a reasonable doubt.

6. Defendant's sentence was "manifestly excessive" and illegal.

*Id.* ¶ 20 (citing Ex. G).

The Appellate Division remanded the matter to the trial court on April 3, 2009, so that the trial judge could inspect Robinson's personnel file *in camera* to address Wiggins's allegations that Robinson was involved in illegal drug use and had been transferred to a juvenile unit in Paterson as a result of a departmental disciplinary action. *Id.* ¶ 21 (citing Ex. H). The trial court reviewed file *in camera* and found no evidence to support Wiggins's claims. The Appellate Division then denied Wiggins's appeal on July 23, 2009. *Id.* ¶¶ 21-22.

## B. Procedural History

Wiggins filed a civil complaint in the District of New Jersey on June 16, 2007.[5] The case was assigned to Hon. Susan D. Wigenton. (Docket No. 1). Before any party moved or answered, Wiggins filed an Amended Complaint ("AC") on August 20, 2007. (Docket No. 2). The AC brought claims against Robinson, the City of Hackensack, Detective Scott Sybell, and Detective Alberto Gutierrez. AC ¶¶ 3, 5, 6. The AC contained two counts: (1) constitutional claims pursuant to 28 U.S.C. § 1983 against the police officer defendants for violations of due process, access to court, equal protection, the privileges and immunities clause, and the right to be free of malicious prosecution; and (2) municipal liability pursuant to Section 1983 as to the City of Hackensack.

---

[5]    The federal court action was filed before Wiggins's appeal to the Appellate Division was decided.

Defendant Robinson filed an answer to the AC and cross-claim against the other defendants on September 11, 2007. (Docket No. 4). Defendant Sybel then moved to dismiss the AC on October 12, 2007. (Docket No. 10). Although Robinson had already answered, he submitted a letter to the court on October 15, 2007, stating that he joined Sybel's motion to dismiss. (Docket No. 11). Defendant Gutierrez also joined Sybel's motion and submitted a supplemental brief in support of the motion on October 19, 2007. (Docket No. 14). Defendant Robinson requested and obtained permission from the Court to file a supplemental brief, which he did on November 2, 2011. (Docket Nos. 17-18). Judge Wigenton heard argument and denied the motions to dismiss on January 9, 2008. (Docket No. 29).

On June 30, 2008, after answers were filed by the defendants, the case was stayed and administratively terminated pending the outcome of Wiggins's appeal in the Appellate Division. (Docket No. 40). Wiggins requested that the case file be re-opened on January 19, 2012, after the Appellate Division had affirmed his conviction and Wiggins had completed his sentence and period of supervised release. (Docket No. 41). The case was then re-assigned to me on August 9, 2012. (Docket No. 47).

On February 4, 2013, Wiggins submitted a letter advising the Court that he sought to voluntarily dismiss the complaint as to the City of Hackensack, Sybel, and Gutierrez. Judge Wigenton so-ordered that request on March 19, 2013.[6] (Docket No. 61). Defendant Robinson, the only remaining defendant in the case, moved for summary judgment on May 30, 2013.[7] (Docket No. 62). Wiggins filed an opposition to the motion for summary judgment clarifying that the only claim he was still pursuing against Robinson was one for malicious prosecution. Opp. at 6-7.

## II.   DISCUSSION

Defendant Robinson, the sole defendant remaining in the case, moves for summary judgment on the entire Amended Complaint. Def. Br. at 1. However, Wiggins pursues only his Count 1 malicious prosecution claim, and the following discussion is therefore limited to that claim. *See* AC ¶ 25(d); Opp. at 6-7.

---

[6]    It is not clear why Judge Wigenton so-ordered that request, as the case had previously been re-assigned.

[7]    On March 14, 2013, counsel for Robinson provided plaintiff's counsel and the Court notice pursuant to Fed. R. Civ. P. 11 that the complaint against Robinson was frivolous and demanding that it be withdrawn. (Docket No. 59-1). It does not appear that any further action regarding this notice was taken, and Robinson moved for summary judgment approximately ten weeks later.

6

## A. Summary Judgment Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Delaware River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

## B. Plaintiff's Malicious Prosecution Claim Fails as a Matter of Law

To prove malicious prosecution under Section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without

probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered "deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).

Robinson argues that Wiggins has failed to establish the elements of his malicious prosecution claim. *Id.* at 9. Robinson also argues that the malicious prosecution claim should be dismissed because Wiggins failed to show that his conviction has been invalidated and thus his malicious prosecution claim violates *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Def. Br. at 7-9. Wiggins has failed to establish the elements of his malicious prosecution claim because he cannot show that the criminal proceeding ended in his favor.[8] Therefore, I need not separately address Robinson's *Heck* argument, which essentially attacks the same deficiency through a different mechanism.[9] Wiggins's claim is barred simply because he cannot establish the essential element of favorable termination.

A plaintiff may establish the favorable termination element by showing that his prior criminal proceeding terminated by "(a) a discharge by a magistrate at a preliminary hearing, or (b) the refusal of a grand jury to indict, or (c) the formal abandonment of the proceedings by the public prosecutor, or (d) the quashing of an indictment or information, or (e) an acquittal, or (f) a final order in favor of the accused by a trial or appellate court." *Kossler*, 564 F.3d at 187 (citing *Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002)).

Wiggins's criminal trial resulted in a mixed verdict, which was affirmed by the state appellate court. To find favorable termination in the context of a partial acquittal, the Court must examine the entire criminal proceeding to assess whether the judgment indicates that the plaintiff is innocent of the alleged misconduct underlying the offenses charged. *Id.* at 188. The result of

---

[8]      Robinson makes the "favorable termination" argument in his brief. However, his analysis mistakenly focuses on case law addressing the probable clause element of a malicious prosecution claim. *See* Def. Br. at 10. As discussed further below, the Third Circuit has stressed certain distinctions between these two elements (as well as the tests for establishing them); therefore, my analysis deviates from the defendant's.

[9]      The Supreme Court held in *Heck* that in a Section 1983 action in which "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence ... the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487. The Section 1983 action may proceed only if it would *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, even if it were successful. *Kossler*, 564 F.3d at 190 n.6.

8

this examination depends on the particular circumstances of the case, including the offenses as stated in the statute and the underlying facts. *Id.* A plaintiff fails to establish favorable termination when those circumstances indicate that the judgment as a whole does not reflect the plaintiff's innocence. *Id.*

The proper inquiry, then, begins with offenses charged under New Jersey law. *See id.* at 189. Wiggins was convicted of third degree possession of cocaine with intent to distribute in violation of N.J.S.A. 2C:35-5a(1) and 2C:35-5b(3) (Count 1), and third degree distribution of cocaine on school property in violation of N.J.S.A. 2C:35-5a and 2C:35-7 (Count 6). At the same trial, Wiggins was acquitted of first degree maintaining or operating a premises where cocaine was manufactured in violation of N.J.S.A. 2C:35-4 (Count 3).[10]

Under New Jersey law, a person is guilty of possession with intent to distribute if he knowingly or purposely manufactures, distributes or dispenses, or possesses or has under his control, a controlled dangerous substance with the intent to manufacture, distribute or dispense, a controlled dangerous substance. N.J.S.A. 2C:35-5(a). The degree of the offense depends on the type and quantity of controlled substance. Distribution of less than one-half of an ounce of cocaine is a third degree offense. 2C:35-5(b)(3). For such a third degree offense, there is no mandatory term of imprisonment and the penalty may include a fine of up to $75,000. N.J.S.A. 2C:35-5(b)(3).

If a person violates N.J.S.A. 2C:35-5 while on school property,[11] he commits a separate third degree offense subject to a mandatory minimum sentence under N.J.S.A. 2C:35-7. The penalty imposed for the crime shall include a term of imprisonment for a mandatory minimum term of one-third to one-half of the sentence imposed, or three years, whichever is greater, during which time the defendant shall be ineligible for parole. N.J.S.A. 2C:35-7. A fine of up to $150,000 may also be imposed. *Id.* A defendant may avoid the mandatory minimum only if he has pleaded guilty pursuant to a negotiated agreement or a post-conviction agreement after trial. N.J.S.A. 2C:35-12.

In contrast, a violation of N.J.S.A. 2C:35-4 is a first degree offense. A person is guilty of that offense if he "knowingly maintains or operates any premises, place or facility used for the manufacture" of cocaine, or "knowingly

---

[10]     As stated above, Counts 2 and 4 were merged into Count 1, and Counts 5 and 7 were merged into Count 6.

[11]     School property is defined as "any school property used for school purposes which is owned by or leased to any elementary or secondary school or school board, or within 1,000 feet of such school property or a school bus, or while on any school bus." N.J.S.A. 2C:35-7.

aids, promotes, finances or otherwise participates in the maintenance or operations of such premises, place or facility." N.J.S.A. 2C:35-4. The mandatory minimum period of imprisonment for that "maintaining or operating" offense is one-third to one-half of the sentence imposed, during which time the defendant shall be ineligible for parole. *Id.* A fine of up to $750,000 or five times the street value of the controlled dangerous substances may also be imposed. *Id.*

That first degree "maintaining or operating" offense—of which Wiggins was acquitted—is a more serious charge carrying graver consequences than the third degree offenses of conviction. In addition, the offenses of conviction are not lesser included offenses of the offense of acquittal, nor do they share common elements with that offense. However, the analysis of the offenses charged does not conclude with the statutory elements. *Kossler*, 564 F.3d at 189 (comparing felony assault charges with summary offenses of public intoxication and disorderly conduct). In addition, the Court must look at the "underlying conduct that the charges sought to punish." *Id.*

As in *Kossler*, both the offenses of conviction and the offense of acquittal are based on the same set of facts. *See Kossler*, 564 F.3d at 189 (concluding that charged offenses all arose from a single physical altercation). All seven of the charges in the superseding indictment were predicated on Wiggins's sales of crack cocaine to defendant Robinson on July 3, 2003 and July 8, 2003. *See* Ex. H. at 6-7. Evidence presented at the criminal trial established that the July 3, 2003 sale occurred at the apartment of Carey Wiggins. *Id.* On that date, Robinson witnessed Carey Wiggins preparing and packaging the crack cocaine while Andre Wiggins was present. *Id.* at 6-7. Immediately afterwards, while still in the apartment, Robinson purchased the crack cocaine from Wiggins. *Id.* at 7. Several days later, Robinson returned to the same apartment and, after being prompted by Carey Wiggins, met Wiggins in a nearby parking lot to purchase another bag of the crack cocaine. *Id.* On that factual basis, Wiggins was convicted of Counts 1, 2, 4, 5, 6, and 7 (and acquitted of Count 3) of the superseding indictment. Wiggins does not point to any separate conduct for which he was charged.

These particular circumstances indicate that the judgment as a whole was aimed at punishing Wiggins for his role in the distribution of crack cocaine to Robinson on July 3 and July 8, 2003. The judgment thus did not reflect his "innocence" of the misconduct underlying the charged offenses, including "maintaining or operating" the apartment where the crack cocaine was manufactured. *See Kossler,* 564 F.3d at 189. The distribution of cocaine on July 3 occurred at his father's apartment, which was allegedly used to manufacture the crack cocaine. The second sale occurred nearby after Carey Wiggins dispatched Robinson from the apartment. Therefore, although Wiggins

10

was acquitted of the "maintaining or operating" offense, that acquittal cannot be wholly divorced from his conviction on the other charges. *See id.* Overall, this criminal proceeding did not end in Wiggins's "favor."

Wiggins argues that his malicious prosecution claim is not precluded by his conviction on the lesser charges because his acquittal on the first degree "maintaining and operating" charge is enough to show "favorable termination." Opp. at 11. Here, Wiggins mistakenly relies on this Circuit's analysis of the probable cause element of a malicious prosecution claim, instead of the test for favorable termination set forth in *Kossler*. 564 F.3d at 193 (citing *Johnson v. Knorr*, 477 F.3d 75, 86 (3d Cir. 2007) (discussing probable cause element in connection with separate charged offenses)). Favorable termination and lack of probable cause are two distinct elements required for a malicious prosecution claim. *Kossler* clearly distinguishes the test for the probable cause element (as stated in cases like *Johnson*) from the test for favorable termination. 564 F.3d at 193-94.

A plaintiff must show that the proceeding was initiated without probable cause to establish the third element of a malicious prosecution claim. *Id.* at 186 (citing *Estate of Smith*, 318 F.3d at 521). "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995)). In a malicious prosecution claim, the requirement of showing a lack of probable cause is aimed at discouraging overcharged cases, and is thus properly directed at the arresting officers and charging prosecutors in the case. *Id.* at 193. Because of that concern, *Johnson* permitted each offense charged to be examined separately for probable cause.[12] *Id.* (noting that the *Johnson* court allowed the plaintiff as many chances to show lack of probable cause as there were charges in the case); *but see Wright v. City of Philadelphia*, 409 F.3d 595, 604 (3d Cir. 2005) (finding that probable cause for one or more charges precluded plaintiff from proceeding with her malicious prosecution claim as to any of the charges).

The claim-by-claim approach introduced in *Johnson* would not be appropriate in the context of the favorable termination element. *See id.* at 193. Unlike a finding a lack of probable cause, a finding of favorable termination directly implicates the validity of the trial court's judgment. *Id.* The purpose of the favorable termination requirement is to avoid the possibility of a claimant's

---

[12]    The *Kossler* majority added that, particularly where the favorable-termination element is established, to find that probable cause present as to some charges, but not as to others, would not conflict with a prior judgment of guilt. 564 F.3d at 193.

succeeding in a tort action after being validly convicted in the underlying criminal case. *Id.* at 187. Such a result would contravene the "strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." *Id.* (citing *Heck*, 512 U.S. at 484). Therefore, where there has been a conviction (or partial conviction), a favorable termination analysis must take into account that the trial court itself (not just the investigators or prosecutors) has endorsed that result. *See id.* at 193.

The distinct purposes, and potential ramifications, of the favorable termination and probable cause elements militate against applying the same test to both elements. In fact, district courts "need not reach the probable cause element unless they first make a finding of favorable termination." *Id.* at 194.[13] Nevertheless, in Wiggins's case, this is a distinction without a difference. Wiggins's malicious prosecution claim fails because he cannot show favorable termination, but a probable cause analysis would likewise dictate that his claim could not be prosecuted.

The record reflects that Robinson's reasonable perceptions on July 3, 2003 supported *all* of the charges against Wiggins: the third degree distribution charges as well as the first degree "maintaining or operating" charge. *See Beck*, 379 U.S. at 91. When Robinson went to Carey Wiggins's apartment to meet Andre Wiggins, he witnessed the crack cocaine being prepared by Carey Wiggins. He then immediately purchased a bag of the freshly prepared batch from Andre Wiggins. Ex. H. at 6-7. These facts and circumstances are sufficient to establish probable cause for each of the crimes for which Wiggins was charged. Therefore, Wiggins's malicious prosecution claim would fail not only because he cannot establish favorable termination, but because he cannot show a lack of probable cause for the offenses charged.

## III.   Conclusion

Accordingly, the evidence proffered by Wiggins fails to support a malicious prosecution claim against Robinson. There is no "genuine" dispute as to the facts underlying his claim, and thus summary judgment in favor of Robinson is appropriate.

An appropriate Order will be entered.

---

[13]   In *Johnson*, all charges against the plaintiff had been dismissed. Thus there was no question that the favorable termination element had been met. *Id.* (citing 477 F.3d at 77).

Dated:  July 7, 2014

_____
**Hon. Kevin McNulty**
**United States District Judge**